Matter of Jones v Burrell Orchards, Inc. (2020 NY Slip Op 03157)





Matter of Jones v Burrell Orchards, Inc.


2020 NY Slip Op 03157


Decided on June 4, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 4, 2020

528311

[*1]In the Matter of the Claim of Paulette Jones, Individually and as Widow of Roy Jones, Decedent, Appellant,
v
Burrell Orchards, Inc., et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: May 21, 2020

Before: Egan Jr., J.P., Mulvey, Aarons, Pritzker and Colangelo, JJ.


Law Firm of Mary J. Mraz, Albany (Mary J. Mraz of counsel), for appellant.
Hamberger & Weiss LLP, Rochester (Joseph P. DeCoursey of counsel), for Burrell Orchards, Inc. and another, respondents.



Colangelo, J.
Appeal from a decision of the Workers' Compensation Board, filed October 31, 2018, which, among other things, denied claimant's request to reopen a prior decision.
In 1996, Roy Jones (hereinafter decedent), a farmer, sustained serious injuries when he fell off a ladder while picking apples and landed on the ground. Decedent filed a claim for workers' compensation benefits (hereinafter the injury claim), which was not controverted by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier), alleging that he was paralyzed from the waist down. Decedent's injury claim was subsequently established for a C7-T1 fracture with a spinal cord injury, causing paralysis of the lower extremities and a neurogenic bladder. In a 1999 amended decision, a Workers' Compensation Law Judge (hereinafter WCLJ) classified decedent with a permanent total disability, continued benefits based upon the average weekly wage amount that had been previously set and marked the injury claim for no further action as all then-present issues were found to be resolved. The carrier continued to pay awards until decedent's death on May 27, 2017, at which time the carrier suspended benefits.
Following decedent's death, claimant, decedent's surviving spouse, filed a claim for death benefits (hereinafter the death claim), which was established without objection from the carrier at an April 2018 hearing. During that hearing, claimant requested an upward modification of the average weekly wage that was previously set in 1997 in the underlying injury claim, and the carrier raised the defense of laches, claiming, among other things, that such request was untimely. The WCLJ denied claimant's request to increase the average weekly wage in the injury claim, and claimant sought administrative review requesting that the injury claim be reopened pursuant to Workers' Compensation Law §§ 22 and 123 to increase the average weekly wage and to address the issue of reimbursement for home health care services that claimant had provided to decedent during his lifetime. Both claimant and the carrier also filed applications for Board review (RB-89 form) in the death claim. In an October 2018 decision, the Workers' Compensation Board denied claimant's application to reopen, finding that claimant's requests were barred by the doctrine of laches. The Board also denied claimant's and the carrier's applications for Board review in the death claim, determining that their responses to question number 15 were incomplete and, therefore, failed to comply with the Board's formatting requirements. Claimant appeals, challenging the Board's denial of her request to reopen the injury claim.[FN1]
It is well settled that the Board has continuing power and jurisdiction over each claim, and it may in its discretion modify or change an award "as in its opinion may be just" (Workers' Compensation Law § 123; see Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d 121, ___, 118 NYS3d 792, 797 [2020]; Matter of Mundy v Verizon N.Y., Inc., 178 AD3d 1178, 1180-1181 [2019]; Matter of Donovan v BOCES Rockland County, 63 AD3d 1310, 1311 [2009]). As relevant here, "upon the application of any party in interest, on the ground of a change in conditions or proof of erroneous wage rate, the Board may at any time review any award, decision or order and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded" (Workers' Compensation Law § 22; see Workers' Compensation Law § 123; Matter of Pace v Concepts in Wood of CNY, Inc., 16 AD3d 804, 804 [2005]). In exercising its discretion to modify a prior award upon an application to reopen (see 12 NYCRR 300.14; Matter of Sinacore v Dreier Structural Steel, Inc., 97 AD2d 659, 659 [1983]), any factual determination with regard thereto will not be disturbed so long as it is supported by substantial record evidence (see Matter of Lanese v Anthem Health Servs., 165 AD3d 1373, 1374 [2018]; Matter of Cuva v State Ins. Fund, 144 AD3d 1362, 1364 [2016]).
Regarding the Board's application of the doctrine of laches to bar the relief sought by claimant, we do not find that such application was proper here. "Laches may apply within the context of a workers' compensation claim when a party is guilty of the failure to assert a right for an unreasonable and unexplained length of time, accompanied by other circumstances causing prejudice to an adverse party" (Matter of Wieneck v Bakery, 103 AD3d 967, 968 [2013] [internal quotation marks, brackets and citations omitted]; see Matter of Sacco v Mast Adv./Publ., 71 AD3d 1304, 1306 [2010]; Matter of Finchum v Colaiacomo, 55 AD3d 1084, 1085 [2008]). The record reflects that after decedent, an immigrant farm worker from Jamaica, was injured, he was represented by counsel in November 1996. That representation, however, was terminated sometime in January or February 1997. As a result, when the average weekly wage was thereafter established in a motion calendar decision, no one appeared on behalf of decedent, there was no direction for the production of a C-240 form (Employer's Statement of Wage Earnings) at that time, and the September 1997 motion calendar decision establishing the average weekly wage appears to not have been sent to the formerly retained counsel in the Board file. Decedent remained unrepresented and in the care of claimant until his death in 2017, after which time claimant retained counsel who promptly raised the issue of the allegedly miscalculated average weekly wage. In our view, especially in light of the seriousness of decedent's injuries and lack of representation during the period of delay, the delay in challenging the average weekly wage was explained and not unreasonable, as claimant's counsel raised the average weekly wage issue with the Board within days of being retained in February 2018. Moreover, notwithstanding the lengthy period of delay in seeking modification of the average weekly wage, it cannot be overlooked that the record indicates that there was submission of conflicting evidence of decedent's wages by the parties in 1996 and that the average weekly wage, therefore, might have been improperly calculated (see Workers' Compensation Law § 22). Indeed, the record demonstrates that both decedent and decedent's employer submitted matching wage information that differed from the amount submitted by the carrier.[FN2]
In addition, with regard to claimant's request for reimbursement of home health care services that she provided to decedent, we find that the delay in making such a request is also excused for substantially the same reasons identified above, and we reject the Board's findings that the carrier would be prejudiced and could not sufficiently audit claimant's reimbursement claims, as claimant could provide testimony as to these matters and submit relevant documentation in support of her requests that the carrier could, in turn, review (compare Matter of Wieneck v Bakery, 103 AD3d at 968). Given the foregoing, we find that the Board's invocation of the doctrine of laches to bar claimant from seeking modification of decedent's average weekly wage and reimbursement of home health care expenses was improper under the particular circumstances of this case (see Matter of Sacco v Mast Adv./Publ., 71 AD3d at 1306-1308; cf. Matter of Sinacore v Dreier Structural Steel, 97 AD2d 659, 659 [1983]; compare Matter of Nunez v Ulster BOCES/Arden Hill, 167 AD3d 1218, 1219-1220 [2018]; Matter of Lu Core v Hooker Electrochemical Co., 6 AD2d 624, 626 [1958]).
Egan Jr., J.P., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as denied claimant's motion to reopen; said motion granted; and, as so modified, affirmed.



Footnotes

Footnote 1: Although claimant also appeals the denial of her application for Board review in the death claim, claimant has failed to raise any issue with respect to the denial in her brief and, accordingly, we deem that portion of her appeal to have been abandoned (see Matter of Jones v Gardner Motors, 45 AD3d 1125, 1125 n [2007]; Matter of Stromski v Jefferson Auto Body, 1 AD3d 643, 644 [2003]).

Footnote 2: We also note that, inasmuch as the limited duration of decedent's employment prior to his injury requires that the average weekly wage be calculated based upon the wages of a similarly employed worker (see Workers' Compensation Law § 14 [2]; Matter of Sacco v Mast Adv./Publ., 71 AD3d at 1367), the Board's finding that the carrier is necessarily prejudiced by its inability to cross-examine decedent due to his passing is misplaced as well as speculative.